UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLIFTON BRADLEY,

       Plaintiff,  04 Civ. 2434 (RCC)(KNF)

            MEMORANDUM & ORDER

   - against -

TIAA-CREF,

       Defendant.

**RICHARD CONWAY CASEY, United States District Judge:**

  Plaintiff Clifton Bradley ("Bradley" or "Plaintiff"), proceeding pro se, brings this action against Defendant TIAA-CREF ("TIAA" or "Defendant") alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964. Defendant moved for dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In a Report and Recommendation ("Report"), Magistrate Judge Kevin Nathaniel Fox recommended converting the motion to one for summary judgment under Federal Rule of Civil Procedure 56, denying Defendant's motion with respect to the ADEA, and granting it with respect to Title VII. Plaintiff and Defendant each have filed objections.

**I. BACKGROUND**

  Plaintiff is a 53-year-old black man. He claims that from June 2000 until September 3, 2002 TIAA employed him as a senior business consultant in its Individual Insurance Division. On June 4, 2002, Bradley received Defendant's notice terminating his employment as part of a reduction in force of the Group Insurance Division. Plaintiff claims that since he was actually a member of the Individual Insurance Division, the reason for his discharge was discriminatory and not economic as Defendant suggests.

  In support of its motion, TIAA relies on the Separation and Release Agreement ("Release") that it provided Bradley on August 5, 2002 and which Bradley signed on September 17, 2002. In exchange for monetary payments, Bradley agreed to release TIAA "from any liability for any and all claims and causes of action arising under federal, state, or local laws, including but not limited to the Age Discrimination in Employment Act of 1967 . . . [and] Title VII of the Civil Rights Act of 1964." (Release at Kesselman Decl. Ex. 1B.) Defendant provided Bradley with 45 days to consider the terms of the Release, as well as "information concerning the group of individuals covered by this termination program, any eligibility factors for such program, and any time limits applicable to such program." Id. Specifically, Plaintiff received the job titles and ages of all the individuals who were and who were not eligible for or selected for the Group Insurance Division program. Id.

1

Magistrate Judge Fox began his analysis by converting the motion to one for summary judgment so that he could consider the Release, which was not incorporated into Plaintiff's complaint. Bradley submitted an affidavit in opposition to Defendant's motion, leading the Magistrate to conclude that Plaintiff had sufficient notice of the conversion. Magistrate Judge Fox then turned to the ADEA claim and found that the Release did not satisfy the ADEA waiver provisions outlined in the Older Workers Benefits Protection Act ("OWBPA") because it was unclear whether Plaintiff was a member of the Individual Insurance Division or the Group Insurance Division and Plaintiff felt forced to sign the Release in 43 days. The Magistrate did recommend, however, granting Defendant's motion for summary judgment on the Title VII claim because under the totality of the circumstances Plaintiff had waived those claims knowingly and voluntarily.

## II. DISCUSSION
### A. Standard

The court reviews de novo all portions of the Report and Recommendation to which there are objections. 28 U.S.C. § 636(b)(1)(C). Plaintiff objects to the portion of the Report recommending that his Title VII claim be dismissed. TIAA objects both to the portion of the Report that concludes Plaintiff's ADEA claim can proceed and to Plaintiff's objections to the Report.

Neither party objected to the recommendation that Defendant's motion be converted to one for summary judgment. The Court has reviewed the file and is satisfied that there is no clear error in the conversion. It therefore adopts Magistrate Judge Fox's recommendation that Defendant's application be treated as a summary judgment motion.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The substantive law underlying the claim determines if a fact is material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To determine whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Anderson, 477 U.S. at 255. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-1224 (2d Cir. 1994). If the moving party meets its burden, the nonmovant must come forward with specific evidence showing that a genuine issue of fact exists. Celotex, 477 U.S. at 324.

### B. ADEA Waiver
A discharged employee's waiver of ADEA claims is governed by the Older Workers

Benefits Protection Act, 29 U.S.C. § 626(f) (OWBPA), and is considered knowing and voluntary only if it conforms to the OWBPA's statutory requirements. Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-27 (1998). For example, "if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees," the employer must give the terminated employee a period of at least 45 days in which to consider the waiver agreement. 29 U.S.C. § 626(f)(1)(F)(ii). Additionally, the employer must inform the employee of certain facts about the group of individuals eligible or selected for the termination program, including the class, unit, or group of individuals covered by the program, their job titles and ages, and the job titles and ages of the individuals in the same job classification or unit who were not eligible or selected for the program. 29 U.S.C. § 626(f)(1)(H). "The information must be given to the employee 'at the commencement of the period' which the employee is given to consider the waiver." Tung v. Texaco Inc., 150 F.3d 208, 209 (2d Cir. 1998) (quoting 29 U.S.C. § 626(f)).

Contrary to the Magistrate's conclusion, Defendant argues that Plaintiff's waiver of ADEA claims did comply with the OWBPA. Plaintiff argues that he was not a member of the Group Insurance Division and his termination should not be considered part of that reduction in force. (Pltf. Aff. at 1-2, at Kesselman Decl. Ex. 4.) Under Plaintiff's theory, the Defendant's obligations under the OWBPA are different from those outlined above. If, as Bradley argues, he was not terminated as part of an employment termination program, Defendant was only required to give Plaintiff a period of 21 days in which to consider the Release, and was not required to provide Plaintiff with any information regarding the job titles and ages of other terminated employees. See 29 U.S.C. § 626(f)(1)(F)(i). Under Plaintiff's theory of the case, his objection to receiving the age and title information of employees in the Group Insurance Division and not the Individual Insurance Division is immaterial. The Release's terms are clear, Plaintiff received substantial consideration for signing it, it advised Plaintiff to consult with an attorney before he signed it, and he was given 45 days to consider its terms. (Release, at Kesselman Decl. Ex. 1B.) Accordingly, if the Court makes the inferences that Plaintiff asks it to make, there can be no dispute that if Plaintiff was not terminated as part of the Group Insurance Division reduction in force, the Release that he signed complied with the OWBPA's requirements and was knowing and voluntary. See 29 U.S.C. § 626(f)(1) (requiring in termination that is not part of reduction in force, inter alia, that waiver of ADEA claims be part of a clear agreement that includes the recommendation to consult with an attorney, the receipt of consideration in exchange for the terminated employee's signature, and the provision of at least 21 days to consider the agreement).

Alternatively, Defendant argues Plaintiff was terminated as part of the Group Insurance Division reduction in force and the Release complied with the OWBPA's requirements for such termination programs. In his affidavit opposing Defendant's motion for summary judgment, Plaintiff stated that he was forced to sign the Release in less than 45 days. (Pltf. Affidavit, at Kesselman Decl. Ex. 4.) He states he received the Release on August 5, 2002 and that on September 17, 2002 he met with Defendant's human resources manager, who did not mention that he had additional time before he had to sign the Release. (Id.) Plaintiff states that "[f]aced with pressure from the company [he] felt [he] had no alternative but to sign." (Id.) Plaintiff does

3

not dispute that the Release clearly stated that he had 45 days to consider its terms. (Release at ¶ 15, at Kesselman Decl. Ex. 1B). He nonetheless argues that the Release is invalid because he felt forced to sign it before the 45 days expired. This argument cannot prevent summary judgment. The Release clearly advised Bradley that he had 45 days to consider it and any pressure he felt does not invalidate the Release. See Bachiller v. Turn On Products, Inc., 00 Civ. 8791 (JSM), 2003 WL 1878416, at *3 (S.D.N.Y. April 14, 2003) (granting employer's motion for summary judgment and finding release valid under OWBPA where it clearly provided employee with 21 days to consider its terms, even when employee signed it on the date of her termination because her manager informed her that she would not receive her vacation pay unless she signed it then), aff'd, 86 Fed. Appx. 465 (2d Cir. 2004). Additionally, Plaintiff argues that he only received information regarding employees in the Group Insurance Division, not the Individual Insurance Division, of which he insists he was a part. The OWBPA requires employers to provide employees part of a termination program with employee information for the group covered by the termination program. Bradley does not dispute that he received information regarding the employees in the Group Insurance Division, which was indisputably the subject of the reduction in force. Accordingly, the Court finds that under either theory of Bradley's termination, the Release complied with the requirements of the OWBPA, and there is no dispute of material fact preventing summary judgment here.

**C. Title VII Waiver**

The Report correctly noted that the Court must apply the "totality of the circumstances" test outlined in Bormann v. AT&T Communications, Inc., 875 F.2d 399, 402-03 (2d Cir. 1989), to determine whether Plaintiff's waiver of his Title VII discrimination claims was made knowingly and voluntarily. The factors to be examined include Plaintiff's education and experience, the amount of time Plaintiff had to review the Release before signing it, whether Plaintiff had any role in deciding the terms of the Release, the clarity of the Release, whether Plaintiff was represented by or consulted with an attorney, and whether the consideration Plaintiff received exceeded that to which he was entitled by law. Tung, 150 F.3d at 208.

Defendant argues that Plaintiff's years of employment made him a sophisticated business person capable of understanding the Release, he had ample time to review the Release, he consulted an attorney, the terms of the Release were clear, and he received substantial consideration. Defendant urges the Court to adopt the Magistrate's finding on this issue. Indeed, the Magistrate recommended that summary judgment be granted to Defendant on Plaintiff's Title VII claim precisely because the Release was clear and unambiguous; he had 43 days to review before he signed it; he had the option of revoking it 7 days after he signed; he consulted with an attorney before signing it, although at that time it was not clear whether the attorney was affiliated with the EEOC; and he received over $13,000 in severance. (Report at 12-13.)

Plaintiff objects to the Magistrate's recommendation and argues that the lawyer he consulted, a Senior Investigator at the EEOC, informed him that he could sign the Release and still pursue his legal rights. (Pltf. Obj. at 4.) Plaintiff may have received inaccurate legal advice, but that does not prevent his knowing and voluntary acceptance of the Release. See, e.g., Warnebold v. Union Pacific R.R., 963 F.2d 222 (8th Cir. 1992) (affirming district court's grant of

4

summary judgment after finding, based on totality of circumstances, that waiver of Title VII claims was knowing and voluntary even when the plaintiff had relied on incorrect advice from an EEOC counselor and attorney telling him release was invalid). In fact, Bradley admits to signing the Release willingly. "I chose to sign it because I was anticipating that the time to find another job might be lengthy . . . and that the severance would help me through the transition to support my family." (Pltf. Obj. at 2). Accordingly, the Court adopts the Magistrate's recommendation that Defendant's motion for summary judgment on Plaintiff's Title VII claim be granted as Plaintiff knowingly and voluntarily waived his right to pursue such claims in the Release.

### III. CONSCLUSION

For the reasons explained above, the Court adopts in part the Report and Recommendation. Defendant's motion for summary judgment is granted on Plaintiff's ADEA and Title VII claims. The Clerk of the Court is asked to close the case.

**So Ordered:** New York, New York
October 20, 2005

*[signature]*

Richard Conway Casey, U.S.D.J.